## ORIGINAL

FILED

JUL 19 2018

U.S. COURT OF
FEDERAL CLAIMS

# In the United States Court of Federal Claims

No. 18-841C
(Filed: July 19, 2018)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| EDWARD THOMAS KENNEDY, * | Pro Se Plaintiff; Sua Sponte Dismissal; |
| * | Subject Matter Jurisdiction; RCFC |
| Plaintiff, * | 12(h)(3); Proper Defendant; Civil Rights |
| * | Claims; Tort Claims; Criminal Matters; |
| v. * | Frivolous Claims; Collateral Attack of |
| * | Prior Decisions; Equitable Relief; |
| THE UNITED STATES, * | 28 U.S.C. § 1631; In Forma Pauperis |
| * | |
| Defendant. * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Edward Thomas Kennedy, Breinigsville, PA, pro se.

Sean King, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

**SWEENEY**, Chief Judge

In this case, plaintiff Edward Thomas Kennedy, proceeding pro se, appears to allege that various federal and state actors kept him in constructive financial imprisonment after a state judge in Texas declined to vacate a judgment against him. Mr. Kennedy seeks $30 million in damages from each of several individuals and entities identified in his complaint plus attorney fees, costs, interest, and declaratory and injunctive relief. Mr. Kennedy also filed an application to proceed in forma pauperis. As explained below, the court lacks jurisdiction to consider Mr. Kennedy's claims. Thus, without awaiting a response from defendant, the court grants Mr. Kennedy's application to proceed in forma pauperis and dismisses his complaint.

### I. BACKGROUND

On November 10, 2003, Mr. Kennedy filed a document titled "Petition in the Nature of a Petition to Vacate a Void Judgment and Collateral Attack Oklahoma Statute Title 12, Sections 1031, 1038" in the Tarrant County, Texas state district court.[1,2] See generally Pet., Blumberg v.

---

[1] The court derives the facts in this section from the allegations set forth in plaintiff's complaint and facts of which the court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.

[2] Oklahoma state trial courts "have power to vacate or modify [their] own judgments or orders," on the basis of fraud or otherwise, within specified time limits. Okla. Stat. Ann. tit. 12,

7017 1450 0000 1346 4537

Kennedy, No. 352-190712-01 (Dist. Ct. Tarr. Cty. Tex. Nov. 10, 2003). The gravamen of Mr. Kennedy's allegations in that petition appears to be that Daniel Blumberg, a Texas attorney, allegedly committed felony fraud in connection with a prior federal court proceeding in the United States District Court for the Western District of Oklahoma ("Western District of Oklahoma") (the nature and results of which are not provided) in an effort to deprive Mr. Kennedy of "money, property, and rights" in contravention of section 453 of title 21 of the Oklahoma Statutes.[3] Id. ¶¶ 4-5.

Although not entirely clear, Mr. Blumberg apparently had obtained a Tarrant County judgment (for an unspecified amount) against Mr. Kennedy following proceedings in the Western District of Oklahoma. Id. In his November 10, 2003 petition, Mr. Kennedy alleged that Mr. Blumberg was guilty of fraud because he "knew that the sum of demanded of [Mr. Kennedy] was different from and greater than a sum [Mr. Kennedy] could owe under any lawful theory." Id. ¶ 4. According to Mr. Kennedy, the purported fraud meant that the Tarrant County judgment was void and "insufficient on its face," and therefore the Tarrant County court lacked jurisdiction to enter a judgment against him. Id. ¶¶ 4-7. In light of this allegation, Mr. Kennedy asked the Tarrant County court to vacate its earlier judgment and award him $25,000 as the "standard damages for fraud" plus costs. Id. ¶ 7. Mr. Kennedy served his petition on Mr. Blumberg as well as Kurt Elieson and Peter Bagley, both of whom were attorneys working at Mr. Blumberg's firm at the time. Id. Certificate of Service. Mr. Kennedy avers, in his complaint before this court, that the presiding judicial officer, Judge Bonnie Sudderth, "ignored" his request. Compl. ¶¶ 7-8.

That same month, Mr. Kennedy filed a Civil Rights Act claim in the United States District Court for the Eastern District of California against Mr. Blumberg, Mr. Bagley, Mr. Elieson, and Robert Kennard.[4] Kennedy v. Kennard, No. 2:03-cv-2392 (E.D. Cal. filed Nov. 17, 2003). Mr. Kennedy voluntarily dismissed the case on March 10, 2004. Id. As of October 2017, he intended to begin law school in Fall 2018 and expressed a desire to become an attorney. Compl. ¶ 9, Kennedy v. United States, No. 5:17-cv-04579 (E.D. Pa. Oct. 12, 2017). Mr. Kennedy acknowledged that filing lawsuits was a way to "test [his] skills as a litigator." Id. ¶ 11.

---

§ 1031 (West 1999). "Proceedings to vacate or modify a judgment, decree or order" on the basis of fraud must generally be commenced "within two (2) years after the filing of the judgment, decree or order," although a ruling that is "void . . . may be vacated at any time, on motion of a party, or any person affected thereby." Id. § 1038.

[3] "Any person guilty of falsely preparing any book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced as genuine upon any trial, proceeding or inquiry whatever, authorized by law, shall be guilty of a felony." Okla. Stat. Ann. tit. 21, § 453.

[4] Mr. Kennard is a California attorney specializing in third-party debt collection. Attorney Search, State Bar of Cal., http://members.calbar.ca.gov/fal/Member/Detail/117017 (last visited July 18, 2018); Nelson & Kennard: Attorneys at Law, http://nelson-kennard.com/ (last visited July 18, 2018).

Mr. Kennedy has filed, since October 2017 alone, at least twenty-one federal lawsuits in Pennsylvania, New York, and elsewhere, four of which he has voluntarily dismissed.

On June 12, 2018, Mr. Kennedy filed the instant suit, which shares similarities with the cases discussed above.[5] See generally Compl. He names several defendants in his complaint: Mr. Blumberg, Blumberg & Associates (Mr. Blumberg's former law firm), Mr. Bagley, Blumberg & Bagley LLP (Mr. Blumberg's and Mr. Bagley's current law firm), Judge Sudderth, the State Bar of Texas, the State of Texas, Mr. Kennard, Nelson & Kennard (Mr. Kennard's law firm), the State Bar of California, Patelco Credit Union (a Northern California-based credit union chartered under California law), Steven Terner Mnuchin (Secretary of the Treasury), the United States Department of the Treasury, the Federal Reserve Bank of New York, Thomas Marshall (General Counsel and Executive Vice President of the United States Postal Service), Megan Brennan (United States Postmaster General and Chief Executive Officer of the United States Postal Service), the United States Postal Service, and the United States federal government. Id. He contends that "[e]ach defendant is an agent of the other, and each has his place in the chain" of responsibility and thus all defendants are "vicariously liable for each instance of injury." Id. ¶ 23.

At bottom, Mr. Kennedy alleges that the identified defendants—"directly, through an agent, or in concert with one another"—have kept him in "constructive financial imprisonment." Id. ¶¶ 2-3. Mr. Kennedy refers to the identified defendants as "[k]idnappers" and "[b]andits," apparently in connection with his description of financial imprisonment as a loss of liberty and his allegations that the identified defendants have refused to return stolen property. Id. ¶¶ 1-3. Mr. Kennedy vaguely alludes to "personal property" and "trade secrets," id. ¶ 31, but does not otherwise identify the property or trade secrets he alleges to have been stolen beyond stating generally that money is owed to him.

In his complaint, Mr. Kennedy alleges:

- After Mr. Blumberg "lied under oath in documents and records" provided to him in connection with the Tarrant County case in 2003, Judge Sudderth "ignored [his] petition to

---

[5] The day prior, Mr. Kennedy filed two other, unrelated actions in this court, neither of which is assigned to the undersigned; both cases were dismissed on June 29, 2018, for lack of subject-matter jurisdiction. Kennedy v. United States, No. 18-830C, 2018 WL 3214049 (Fed. Cl. June 29, 2018); Kennedy v. United States, No. 18-826C, 2018 WL 3214115 (Fed. Cl. June 29, 2018). Also on June 11, 2018, Mr. Kennedy filed an action in the United States Tax Court. Kennedy v. Comm'r, No. 011586-18 (T.C. filed June 11, 2018). Since filing the instant complaint, Mr. Kennedy has filed six additional actions in this court, one of which is assigned to the undersigned. Kennedy v. United States, No. 18-1030C (Fed. Cl. filed July 11, 2018); Kennedy v. United States, No. 18-1029C (Fed. Cl. filed July 11, 2018); Kennedy v. United States, No. 18-1028C (Fed. Cl. filed July 11, 2018); Kennedy v. United States, No. 18-1027C (Fed. Cl. filed July 11, 2018); Kennedy v. United States, No. 18-1006C (Fed. Cl. filed July 11, 2018); Kennedy v. United States, No. 18-942C (Fed. Cl. filed June 28, 2018).

vacate a void judgment." Id. ¶¶ 7-8.  By doing so, Mr. Blumberg and Judge Sudderth "proceeded under color of law and stole funds from [Mr. Kennedy]" by denying him funds that he asserts were rightfully his, resulting in a "loss of [financial] liberty." Id. ¶¶ 9-10.  Since, according to Mr. Kennedy, the Tarrant County court lacked jurisdiction to enter a void judgment, Mr. Blumberg and Judge Sudderth breached their duty "to prove jurisdiction when objection to jurisdiction is asserted." Id. ¶¶ 11-12.

- The identified defendants breached their duty to allow Mr. Kennedy to "proceed without injury, secure in his capacities," and to "exercise his right to liberty." Id. ¶¶ 16-18.

- The identified defendants, particularly those who are attorneys, have "breach[ed] their oaths of offices." Id. ¶ 26.  Further, "[t]he business model of Defendants is based on a foundation of deceptions, lies[,] and fraud." Id. ¶ 28.

- Mr. Blumberg, Mr. Bagley, Mr. Kennard, and Patelco Credit Union "stole[ Mr. Kennedy's] personal property and trade secrets." Id. ¶ 31.

- Mr. Kennedy "has the right to demand and redeem lawful money" from Patelco Credit Union and the Federal Reserve Bank of New York, and only recently became aware that he could do so. Id. ¶¶ 32-33 (relying on 12 U.S.C. § 411).  Thus, Patelco Credit Union has been "unlawfully using the interest" on Mr. Kennedy's money since 1985, when he deposited his first paycheck. Id. ¶¶ 33-34.

Mr. Kennedy demands, from each identified defendant, (1) the greater of "$1,000 for each day of unlawful behaviors" or $5 million for "general damages," id. ¶ 43, and (2) the greater of "$5,000 for each failure to act" or $25 million for "damages for the injury caused by defendant[s]' absence of required actions," id. ¶ 44.  He also demands the return of the "value of all bonds created in these matters in this case," id. ¶ 51, permanent injunctions enjoining the identified defendants "from interfering in any way with [his] lawful rights" and ordering the identified defendants to "provide him with a lawful government" and "honor their fiduciary duty to [him]," id. ¶¶ 48-49, and declaratory judgments that "defendants have acted contrary to constitutional right, power, or privilege" and "in excess of statutory jurisdiction [and] authority and short of statutory right," id. ¶¶ 46-47.

## II. LEGAL STANDARDS

### A. Pro Se Plaintiffs

Pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted). However, the "leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a pro se plaintiff is not excused from his burden of proving, by a preponderance of evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 179 (1936); Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

### B. Subject Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a "threshold matter." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). Subject matter jurisdiction cannot be waived or forfeited because it "involves a court's power to hear a case." United States v. Cotton, 535 U.S. 625, 630 (2002), quoted in Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868). Therefore, it is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case." Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); accord K-Con Bldg. Sys., Inc. v. United States, 778 F.3d 1000, 1004-05 (Fed. Cir. 2015). Either party, or the court sua sponte, may challenge the court's subject matter jurisdiction at any time. Arbaugh, 546 U.S. at 506; see also Jeun v. United States, 128 Fed. Cl. 203, 209-10 (2016) (collecting cases).

In determining whether subject matter jurisdiction exists, the court generally "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). However, the court has no subject matter jurisdiction over frivolous claims. Moden v. United States, 404 F.3d 1335, 1340-41 (Fed. Cir. 2005). For example, there is no subject matter jurisdiction over claims that are "so insubstantial, implausible, foreclosed by prior decisions . . . , or otherwise completely devoid of merit as not to involve a federal controversy." Id. at 1341 (internal quotation marks omitted). If the court finds that it lacks subject matter jurisdiction over a claim, Rule 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC") requires the court to dismiss that claim.

### C. The Tucker Act

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "may not be inferred, but must be unequivocally expressed." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003). Further, "[w]hen waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287 (1983).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2012); White Mountain, 537 U.S. at 472. However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 298 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

### D. Statute of Limitations

Besides meeting the Tucker Act requirements, any action in the Court of Federal Claims must be "filed within six years after such claim first accrues" to fall within the court's jurisdiction. 28 U.S.C. § 2501. A cause of action accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988), quoted in San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1350 (Fed. Cir. 2011). The limitations period set forth in 28 U.S.C. § 2501 is an "absolute" limit on the ability of the Court of Federal Claims to exercise jurisdiction and reach the merits of a claim. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-35 (2008).

### III. DISCUSSION

Under a liberal construction of Mr. Kennedy's pro se complaint, he is alleging claims for embezzlement, perjury, fraud, conspiracy, harassment, breach of fiduciary duty, negligence, violation of 12 U.S.C. § 411, and civil rights violations against various federal, state, and private individuals and entities. Mr. Kennedy also appears to collaterally attack decisions issued by courts in the Western District of Oklahoma and Tarrant County, Texas. Without inquiring into whether Mr. Kennedy's claims are barred by claim and/or issue preclusion based on prior court decisions, it is clear that the Court of Federal Claims lacks jurisdiction over his claims. Consequently, Mr. Kennedy's complaint must be dismissed.

## A. The United States Is the Only Proper Defendant in the Court of Federal Claims

Although the court has liberally construed the complaint in the light most favorable to Mr. Kennedy, the crux of the allegations contained therein are lodged against (1) attorneys (and their law firms) and a judge involved in his prior court cases, i.e., private individuals and state government officials, and (2) state agencies responsible for supervising attorneys and the courts, including the state itself. Mr. Kennedy also names Patelco Credit Union, a private entity, as a defendant. However, in the Court of Federal Claims, "the only proper defendant . . . is the United States, not its officers, nor any other individual." Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003); accord RCFC 10(a). Because "the United States itself" is the only proper defendant in the Court of Federal Claims, this court lacks jurisdiction "over any claims alleged against states, localities, state and local government entities, or state and local government officials and employees." Anderson v. United States, 117 Fed. Cl. 330, 331 (2014). Similarly, the Court of Federal Claims lacks jurisdiction "over suits against private parties." Edelmann v. United States, 76 Fed. Cl. 376, 380 (2007). In other words, "if the relief sought [in the Court of Federal Claims] is against other than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court." Sherwood, 312 U.S. at 584. Accordingly, to the extent that Mr. Kennedy complains of improper conduct by parties other than the United States federal government, this court lacks jurisdiction over those claims, and they must be dismissed.

## B. The Court of Federal Claims Lacks Jurisdiction Over Mr. Kennedy's Civil Rights and Tort Claims

To the extent that Mr. Kennedy asserts civil rights violations and commissions of various torts, his claims are outside the reach of this court's Tucker Act jurisdiction.

First, the Court of Federal Claims is not a federal district court. Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); see also Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 563 (2017) (distinguishing between the "Court of Federal Claims" and "federal district courts").

Second, only federal district courts possess jurisdiction to entertain claims alleging civil rights violations. See, e.g., Jones v. United States, 104 Fed. Cl. 92, 98 (2012) (explaining that the Court of Federal Claims has no jurisdiction over claims based on, among other causes of action, alleged "violations of . . . civil rights"); Marlin v. United States, 63 Fed. Cl. 475, 476 (2005) (explaining that Bivens claims and claims alleging violations of 42 U.S.C. §§ 1981, 1983, and 1985 must be heard in federal district courts).

Third, this court lacks jurisdiction to entertain claims sounding in tort. 28 U.S.C. § 1491(a); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008). Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680, jurisdiction over tort claims against the federal government lies exclusively in federal district courts. U.S. Marine, Inc. v. United States, 722 F.3d 1360, 1365-66 (Fed. Cir. 2013). Claims of fraud, conspiracy, harassment, breach of fiduciary duty, and negligence sound in tort. See, e.g., Lawrence Battelle, Inc. v. United States, 117 Fed. Cl. 579, 585 (2014) (fraud and negligence); Sellers v. United

States, 110 Fed. Cl. 62, 68 (2013) (negligence); Cox v. United States, 105 Fed. Cl. 213, 218 (2012) (harassment, fraud, and breach of fiduciary duty); Phang v. United States, 87 Fed. Cl. 321, 325 (2009) (fraud); Gant v. United States, 63 Fed. Cl. 311, 316 (2004) (conspiracy, fraud, and negligence).

In short, the court must dismiss any civil rights or tort claims asserted by Mr. Kennedy.

## C. The Court of Federal Claims Lacks Jurisdiction Over Criminal Matters

Next, Mr. Kennedy alleges that criminal activity has occurred in the form of perjury and embezzlement. However, it is well established that the Court of Federal Claims "has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code." Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994) (internal quotation marks omitted) (summarily affirming a Court of Federal Claims dismissal order); see also Hufford v. United States, 87 Fed. Cl. 696, 702 (2009) (collecting cases). Therefore, to the extent that Mr. Kennedy seeks redress for criminal violations, such claims must be dismissed as beyond the jurisdiction of this court.

## D. The Court of Federal Claims Lacks Jurisdiction Over Mr. Kennedy's Statutory Claim

Mr. Kennedy also asserts that he is entitled to "demand and redeem lawful money" from Patelco Credit Union and the Federal Reserve Bank of New York pursuant to 12 U.S.C. § 411. In its entirety, that statute (which was last amended in 1935) provides:

> Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

12 U.S.C. § 411 (2012). In other words, cash can be (1) used to pay government debts, (2) deposited in banks, and (3) redeemed for "lawful money" at the Treasury Department or any Federal Reserve bank.

The purpose of this statute is to "make clear that the [Federal Reserve] notes [i.e., cash] are authorized currency of the United States." Provenza v. Comptroller of Treasury, 497 A.2d 831, 833-34 (Md. Ct. Spec. App. 1985). To the extent that this statute imposes a duty on the federal government, the Treasury Department and Federal Reserve banks must redeem cash for lawful money when cash is presented for redemption. However, Mr. Kennedy asserts that he "may demand lawful money at any time," Compl. ¶ 36, without presenting cash equal in value to

the amount of lawful money demanded.  Such an allegation is frivolous on its face.  As such, the allegation fails to invoke the jurisdiction of this court.

### E.  The Court of Federal Claims Lacks Jurisdiction to Entertain Plaintiff's Collateral Attack Against the Decisions of Other Courts

In addition to alleging claims involving civil rights, torts, criminal matters, and statutory violations, Mr. Kennedy appears to be collaterally attacking unspecified decisions of the United States District Court for the Western District of Oklahoma and the Tarrant County, Texas state district court.  However, the Tucker Act does not provide the Court of Federal Claims with jurisdiction to entertain collateral attacks on the decisions of other courts.  28 U.S.C. § 1491(a); see, e.g., Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1352 (Fed. Cir. 2015) ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court."); Vereda, Ltda. v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001) ("[T]he Court of Federal Claims cannot entertain a taking claim that requires the court to scrutinize the actions of another tribunal." (internal quotation marks omitted)).  Mr. Kennedy's recourse concerning prior adverse decisions is "the statutorily defined appellate process," Shinnecock Indian Nation, 782 F.3d at 1353 (citing 28 U.S.C. § 1291), whether in state or federal court.

### F.  Mr. Kennedy's Claims Are Time-Barred

Even if this court otherwise had jurisdiction to entertain any of Mr. Kennedy's claims, they are likely barred by the six-year statute of limitations generally applicable in the Court of Federal Claims.  See 28 U.S.C. § 2501.  The only specific conduct to which Mr. Kennedy refers in his complaint is (1) Judge Sudderth having "ignored" his November 10, 2003 petition with respect to Mr. Blumberg's allegedly improper acts and (2) his own failure to demand lawful money beginning in 1985.  Further, Mr. Kennedy voluntarily dismissed a subsequent lawsuit that he filed against Mr. Blumberg on March 10, 2004.  Therefore, the six-year statute of limitations imposed by 28 U.S.C. § 2501 began to run, at the latest, on March 10, 2004, and expired, at the latest, on March 10, 2010.  Because Mr. Kennedy did not file the instant complaint until June 12, 2018, this court lacks jurisdiction to entertain his claims.

### G.  The Court of Federal Claims Lacks Authority to Grant Equitable Relief

Finally, in addition to monetary relief, Mr. Kennedy seeks certain permanent injunctions and declaratory judgments.  However, it is well settled that the Court of Federal Claims generally lacks the authority to grant such equitable relief.  See Bowen v. Massachusetts, 487 U.S. 879, 905 (1988) (holding that the Court of Federal Claims lacks the "general equitable powers of a district court to grant prospective relief").  This court is only authorized to award equitable relief in certain specified situations.  See id. at 905 n.40; Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec., 490 F.3d 940, 943 (Fed. Cir. 2007); Kanemoto v. Reno, 41 F.3d 641, 644-45 (Fed. Cir. 1994).  None of those circumstances applies here.  See 28 U.S.C. § 1491(a)(2) (providing the court with jurisdiction to issue, "as incident of and collateral to" an award of money damages, "orders directing restoration to office or position, placement in

appropriate duty or retirement status, and correction of applicable records"); id. (providing the court with jurisdiction to render judgment in nonmonetary disputes arising under the Contract Disputes Act of 1978); id. § 1491(b)(2) (providing the court with jurisdiction to award declaratory and injunctive relief in bid protests); id. § 1507 (providing the court with jurisdiction to issue declaratory judgments under 26 U.S.C. § 7428).

### H.  The Court Declines to Transfer This Case

When the Court of Federal Claims lacks jurisdiction over a claim, it is empowered to transfer such claim to an appropriate court if doing so "is in the interest of justice." 28 U.S.C. § 1631.  "Transfer is appropriate when three elements are met:  (1) [t]he transferring court lacks subject matter jurisdiction; (2) the case could have been filed in the court receiving the transfer; and (3) the transfer is in the interests of justice."  Brown v. United States, 74 Fed. Cl. 546, 550 (2006).  The failure of even one of these elements renders transfer improper.

Transferring Mr. Kennedy's case to an appropriate district court will not "serve the interests of justice."  Khalil v. United States, 133 Fed. Cl. 390, 393 (2017).  In Khalil, another judge of this court declined to transfer the case because doing so would "serve[] no purpose" since the plaintiff's claims had already been considered by a district court.  Id.  In the instant case, Mr. Kennedy has similarly "already availed himself of the opportunity," id., to present his claims against the federal government to a district court.  In other words, the courts that would have jurisdiction have already considered plaintiff's claims.  Therefore, as in Khalil, transferring Mr. Kennedy's claims would be futile.  In any event, transferring a case where the plaintiff wants to "test his skills as a litigator" does not advance the interests of justice.

Accordingly, the court declines to transfer any part of plaintiff's case to another court.

### IV.  APPLICATION TO PROCEED IN FORMA PAUPERIS

To proceed with a civil action in this court, a plaintiff must either pay $400 in fees—a $350 filing fee plus a $50 administrative fee—or request authorization to proceed without payment of fees by submitting a signed application to proceed in forma pauperis.[6]  See 28 U.S.C. §§ 1915, 1926; RCFC 77(c); see also Waltner v. United States, 93 Fed. Cl. 139, 141 n.2 (2010) (concluding that 28 U.S.C. § 1915(a)(1) applies to both prisoners and nonprisoners alike). Plaintiffs wishing to proceed in forma pauperis must submit an affidavit that (1) lists all of their assets, (2) declares that they are unable to pay the fees, and (3) states the nature of the action and their belief that they are entitled to redress.  28 U.S.C. § 1915(a)(1).  Evaluation of a plaintiff's ability to pay is "left to the discretion of the presiding judge, based on the information submitted by the plaintiff."  Alston-Bullock v. United States, 122 Fed. Cl. 38, 45 (2015).

---

[6]  While the Court of Federal Claims is not generally considered to be a "court of the United States" within the meaning of Title 28 of the United States Code, the court has jurisdiction to adjudicate applications to proceed in forma pauperis.  See 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be a "court of the United States" for purposes of 28 U.S.C. § 1915).

As noted above, Mr. Kennedy filed, concurrent with the complaint, an application to proceed in forma pauperis. Mr. Kennedy has fulfilled all three requirements, and the court is satisfied that he is unable to pay the filing fee otherwise required by RCFC 77.1(c). Therefore, the court grants Mr. Kennedy's application and waives his filing fee.

## V. CONCLUSION

The Court of Federal Claims lacks jurisdiction over claims involving civil rights, torts, or criminal matters; to entertain frivolous claims or collateral attacks on the decisions of other courts; and, with exceptions not relevant here, to award equitable relief. Therefore, the court has no jurisdiction to consider any aspect of Mr. Kennedy's complaint. Further, transferring Mr. Kennedy's case to a district court is not in the interests of justice.

Accordingly, Mr. Kennedy's complaint is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. Mr. Kennedy's application to proceed in forma pauperis is **GRANTED**. No costs. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Chief Judge